STANLEY COFFMAN and JAMES P. GOINS,
Plaintiffs in Error, v. STATE OF TENNESSEE,
Defendant in Error.

466 S.W.2d 241.

Court of Criminal Appeals of Tennessee. Dec. 2, 1970.

Certiorari Denied by Supreme Court April 5, 1971.

Albert Secor and Richard P. Jahn, Chattanooga, for plaintiffs in error.

David M. Pack, Atty. Gen., Everett H. Falk, Asst. Atty. Gen., Nashville, Richard Ruth, Asst. Dist. Atty. Gen., Chattanooga, for defendant in error.

## OPINION

OLIVER, Judge.

Stanley Coffman and James P. Goins, the defendants below, indigent and represented by court-appointed counsel, were convicted of armed robbery in the Criminal Court of Hamilton County and were sentenced to imprisonment for 30 years in the State Penitentiary. Unsuccessful in their new trial motions, they are now before this Court upon appeal in the nature of a writ of error duly perfected.

Ross L. McDaniel operated McDaniel's Pharmacy in Hamilton County and was also postmaster of a small branch United States Post Office located in the store. On October 30, 1968, the defendants entered the pharmacy and Coffman, wanting to purchase a $50 postal money order, tendered a $100 bill. Advised by McDaniel that he did not have change for the bill, Coffman then sent Goins out to get the bill changed and when he returned Coffman filled out the money order, after McDaniel stamped it properly, and mailed it in an envelope bearing a Nashville address. They were driving a small white car with two spotlights and bearing New York license plates.

The next evening, October 31st, about 9:00 o'clock, the defendants again entered the pharmacy and, brandishing pistols, ordered Mr. McDaniel into the post office and forced him to set the money order machine to print $100 money orders; he printed two such money orders. The defendants then tied him with adhesive tape to a commode in the rest-room and Goins warned him that if he moved before 10 minutes he would be dead. When

McDaniel asked Goins to pull up his sleeve so he could see his watch, Goins started to take the watch but said, "You can have it, it's no good." They took between $32 and $40 out of McDaniel's pocket and about $200 from the pharmacy cash register. Some narcotics, including liquid Demerol, were also taken. McDaniel heard the defendants operating the money order machine in the post office. A postal audit conducted immediately after the robbery disclosed that about $140 and some 13 serially numbered postal money order blanks were missing.

The following morning, pursuant to information which he obtained in his investigation, the Chief of Police of East Ridge, Tennessee obtained warrants for the defendants.

The joint indictment, in proper form, charged that on the 31st day of October 1968 the defendants, using pistols and by force and violence and by putting him in fear of bodily injury, forcibly took from "Ross L. McDaniel, an individual doing business as McDaniel Pharmacy, * * * $150.00 in good and lawful money of the United States of America, and an assortment of narcotics, to the value of $15.00, all to the total value of $165.00."

In a pre-trial order appointing additional counsel for Goins, it was stated that it appeared to the court that this defendant had been tried in the United States District Court "for alleged offense arising out of the same transaction" and that he was there represented by the attorney appointed as additional counsel. Prior to trial Coffman filed a motion to dismiss the indictment upon the ground that previously he was convicted and sen-

tenced to 25 years in the Federal Penitentiary "for commission of the same crime in the United States District Court for the Eastern District of Tennessee, Southern Division," and that the offense charged in the State indictment arose out of the same transaction as did the federal charges and subjected him to double jeopardy in violation of the Fifth and Fourteenth Amendments to the United States Constitution. The court overruled that motion.

■ In their respective motions for a new trial, and here, one error assigned by each of the defendants was and is that his trial in the instant case unconstitutionally placed him in double jeopardy because previously in the federal court he had been tried and convicted of armed robbery arising out of the same transaction. In their Assignments of Error and Brief, it is stated that their federal court convictions were for armed robbery of a federal post office arising out of the same transaction. It is argued that "While there is a *technical* distinction between armed robbery of a federal post office and armed robbery of Mr. McDaniel, though both offenses occurred simultaneously as result of the same alleged act or transaction there is no *practical* distinction."

We do not agree. Defense counsel candidly concedes that "no case has held to this point that forbidden double jeopardy occurs when accused is subjected to trial and punishment in both the state court system and the federal court system in a case such as the present one." It is enough to say that just because an armed robbery of the proprietor of a business establishment and of a federal post office located therein and operated by him are committed during the same hold-up does not

mean that the state is constitutionally forbidden, upon the ground of double jeopardy, to try the robbers for robbery of the businessman simply because the United States Government previously tried them in a federal court for the separate federal offense of post office robbery.

However, the defendants also insist, as they did in their motions for a new trial, that the trial court committed prejudicial error in admitting, over their objections, evidence pertaining to stolen postal money orders and robbery of the post office when no reference thereto was made in the indictment.

Mr. McDaniel identified an invoice by which he received 1000 serially numbered money order blanks from the Chattanooga Post Office, and his daily post office cash report for October 31, 1968 showing money orders issued, fees collected, cash remitted, etc., and the serial numbers of money orders missing after the robbery.

Mrs. Jewell Huckabee, a resident of Nashville, testified that Coffman came to her house between 2:00 and 3:00 o'clock on Friday morning, November 1st with a suitcase, some drums, and clothes; that he left his suitcase and drums and left with her when she started to work about 8:00 or 8:30 that morning; that about two days previously he mailed her a $50 money order after calling and telling her that he was going to send her some money. She identified a Xerox copy of the money order, which she said she cashed, and it was admitted in evidence. The envelope in which it was mailed, addressed to her, was also admitted. Mrs. Huckabee also testified that, following a visit and interrogation by a Mr. Pierce

(Postal Inspector Robert C. Pierce) she inspected Coffman's suitcase and found three $100 money orders which she identified by her initials placed thereon at the request of the Inspector, and that she turned them over to him. Those three money orders, two in blank and one made payable to and endorsed by Ronald Dillon and showing the purchaser as George Coleman, bearing serial numbers 692, 698 and 699 (last three digits), were admitted in evidence.

Postal Inspector Robert C. Pierce identified all the exhibits introduced by the State to the testimony of Mrs. Huckabee, and said that she turned them over to him on the afternoon of November 3, 1968.

Postal Inspector H. O. White testified that he received notice of the post office robbery on the evening of October 31, 1968 and began an investigation at the scene; that his investigation disclosed that 13 money orders were missing, bearing serial numbers 3,761,368,867 through 3,761,368,699; he identified the three money orders introduced as exhibits to the testimony of Mrs. Huckabee as being within the group that were missing. He testified that he was present at the Buena Vista Motel in Chattanooga where Goins had been arrested, advised him fully of his constitutional rights and presented to him a typed statement explaining those rights and that Goins read it and declined to sign the waiver typed below the explanation and stated that he knew his constitutional rights; that Goins then said that, to assist in the investigation, or to cooperate in the investigation, he would tell the inspector only that in Nashville he cashed four money orders that came from this post office, and that someone else filled them out. Inspector White also testified at

some length regarding the processes involved in the printing and distribution of money orders to the various post offices and the issuing procedures. He testified that a rubber stamp for stamping money orders, found in Goins' possession, admitted in evidence as an exhibit to the testimony of the East Ridge Chief of Police, was identical to the stamp showing the date of October 30, 1968 used on the three money orders which Mrs. Huckabee found in Coffman's suitcase, above referred to.

Neither of the defendants testified. In an attempt to establish an alibi, Coffman introduced two part-time musicians from Nashville who testified that either on Halloween night, Thursday, October 31, or Friday night, November 1, 1968, Coffman played in their band in Nashville as a substitute drummer in the absence of the regular drummer.

■ Obviously, the real question involved with respect to the admission, over the defendants' objections, of all the evidence concerning the post office robbery and the theft of the postal money orders is the admissibility of evidence of another crime not charged in the indictment in the instant case. Essentially, as we understand it, the defendants contend that the admission of evidence with reference to the post office robbery and theft of the money orders amounted to prejudicial evidence of a separate and distinct crime for which they were not on trial. This contention is untenable. This record demonstrates conclusively that the robbery of Mr. McDaniel and the taking from him of money and narcotics, and the robbery of the post office which he operated, accomplished at the same time and place and in a single transaction, were inseparably connected and

bound up together, notwithstanding that in fact and in law they were separate offenses—the one cognizable by the courts of this state as a violation of its laws, and the other a violation of federal law. In this lies the fundamental error of the defendants' insistence.

The rules governing admissibility of evidence of other crimes not charged in the indictment in a case on trial are so well established that they are common knowledge in the legal profession, and have been reiterated and applied in a great variety of factual contexts by the Supreme Court of this State. See Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856 and Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523. In *Carroll,* quoting approvingly from Mays v. State, 145 Tenn. 118, 238 S.W. 1096, the Court said:

> "The question of the admissibility of evidence of other crimes to prove defendant's guilt of the crime on trial underwent elaborate consideration in *Mays v. State,* supra. There the Court said:
>
>> 'Evidence which is relevant to defendant's guilt is not inadmissible because it proves or tends to prove him guilty of another and distinct crime. It frequently happens that two distinct offenses are so inseparably connected that the proof of one necessarily involves proving the other, and in such a case on a prosecution for one evidence proving it cannot be excluded because it also proves the other. Evidence of another and distinct crime is admissible if it was committed as a part of the same transaction and forms part of the *res gestae.*' "

In Church v. State, 206 Tenn. 336, 333 S.W.2d 799,

a third degree burglary case in which it was assigned as error that the trial court admitted evidence that the defendant also broke into a safe located in the burglarized premises, with which he was not charged, the Court said: "The breaking and entering into the office of the Insurance Company and the breaking open of the safe therein were parts of the same transaction and form parts of the *res gestae*. Mays v. State, 145 Tenn. 118, 140-141, 238 S.W. 1096."

In Kennedy v. State, 186 Tenn. 310, 210 S.W.2d 132, wherein the defendant was convicted of assault with intent to commit second degree murder upon a named police officer, rejecting the defendant's contention that it was error to admit evidence that other shots fired by him struck other people not mentioned in the indictment, the Court said:

"The insistence is also made that the trial court erred in allowing one of the highway patrolmen to testify that when the shots were fired from this building, others were struck besides Austin, upon whom the indictment alleged the assault to have been made. We think this was a part of the *res gestae* and therefore admissible. Mays v. State, 145 Tenn. 118, 238 S.W. 1096."

Such is the general law. A very comprehensive treatment of this entire question is given in 29 Am.Jur.2d., Evidence, §§ 320-333. In Section 321, p. 370, discussing exceptions to the rule regarding the inadmissibility in criminal prosecutions of evidence of other crimes or other offenses, it is said:

"Evidence covering the commission of other offenses

is likewise admissible where two or more crimes are so linked together in point of time or circumstance that one cannot be fully shown without proving the other, or where they form part of the res gestae."

In 22A C.J.S. Criminal Law § 663, pp. 674-676, it is stated: "Evidence of another and distinct crime is admissible where it was committed as part of the same transaction and forms part of the *res gestae*. Stated in another way, the rule is that acts which are res gestae are admissible, even though they may show the commission by accused of another crime or other crimes."

So, the true rule unquestionably settled is that where the acts are all so closely related, in point of time and place, and so intimately associated with each other that they form one continuous transaction, the whole transaction may be shown, the reason being that all such acts are admissible as necessary parts of the proof of the entire deed, or as inseparable elements of the deed, or as concomitant parts of the criminal act. State v. Rand, 238 Iowa 250, 25 N.W.2d 800, 170 A.L.R. 289.

Under the facts and circumstances shown by the record in this case, in the same tranaction and by the same acts of force and violence and intimidation, the defendants actually committed a single robbery in two parts, one the pharmacy and the other the post office located in the same room—both under the control of and then being operated by the same man who was present and alone in the establishment. There was no error in admitting evidence of the virtually simultaneous post office phase of this criminal transaction.

In another Assignment of Error the defendants earnest-

ly insist the court committed error in admitting articles found in the motel room in which Goins was apprehended and arrested by East Ridge Police Chief Roy Parham on Saturday afternoon following the robbery, upon the warrant previously obtained charging him with armed robbery. A woman and two small children were in the room with Goins. The officer had no search warrant. In a hearing apart from the jury, Goins' counsel entered a general objection to admission of anything found in the search of his motel room, which the court overruled. In the presence of the jury, Chief Parham testified that Goins was advised of his rights by another officer and was placed in a chair in the center of the room; that "we searched the immediate area of the room there"; that they found a fully-loaded .38 caliber revolver, a rubber stamp "for stamping money orders" [Coffman's counsel's objection to the witness' language "for stamping money orders" as a conclusion was sustained]; a bottle of Demerol [later excluded upon Goins' counsel's motion and the jury instructed to exclude it from their consideration, upon the ground that it was never identified as having come from McDaniel's Pharmacy]; a key to a Nashville motel room "found in Goins' possession"; registration papers found in Goins' billfold for the automobile he had—a white 1963 Ford Falcon—showing it was registered in New York to one Joseph J. Wheeler and the New York license plate number; and a driver's license, selective service registration and classification cards, a bank checking account identification card and a social security card, all bearing the name of Wayne Teasley of Madison, Tennessee, which were found under the rug in the motel room. All of these items were admitted in evidence.

■ At the outset, it is quite clear that Coffman, not being in the room where Goins was arrested nor registered as an occupant of that room, nor otherwise claiming that he was entitled to any right of possession or use and occupation thereof nor to any interest in the articles seized, can have no standing to object to the search or admission of the fruits thereof in evidence. Bowman v. State, 211 Tenn. 38, 362 S.W.2d 255; Neal v. State, 206 Tenn. 492, 334 S.W.2d 731.

In contesting the validity of the search and seizure and admission in evidence of the articles above mentioned, the defendants take their stand upon Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, taking the position that the warrantless search of Goins' motel room cannot be constitutionally justified as incident to his arrest, and that there was ample time to procure a search warrant. In *Chimel,* wherein the entire house was searched after the defendant was arrested therein upon a warrant, the Court said, *aliunde*:

> "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to

the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

"There is no comparable justification, however, for routinely searching rooms other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant. The 'adherence to judicial processes' mandated by the Fourth Amendment requires no less."

In the first place, there is no evidence in this record that any of the items seized in Goins' motel room were not within his reach or " 'within his immediate control'— construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." Also, not to be ignored in assaying the total circumstances then and there prevailing is the fact that his female companion (not to mention her two children) was in the room with him. So far as this record shows, none of the items taken were found by searching any "desk drawers or other closed or concealed areas in that room," unless it can be said that the various identification cards of Wayne Teasley found under the edge of the rug were in such a concealed area. Those cards are not shown to have any relevance whatsoever. The same is true of the Nashville motel key. So, we do not agree that *Chimel* condemns this search.

■ But, of greater importance insofar as the defendants' reliance upon *Chimel* is concerned, in our considered opinion the rule in that case can have no application here, for a very simple reason. Three United States Courts of Appeal have held that Chimel v. California is not retroactive and can apply only to searches conducted after June 23, 1969, the date of decision in that case. Porter v. Ashmore, 421 F.2d 1186 (4th Cir. 1970); Lyon v. United States, 416 F.2d 91 (5th Cir. 1969); United States v. Bennett, 415 F.2d 1113 (2nd Cir. 1969). Goins' arrest and the search of his motel room occurred on Saturday, November 2, 1968.

So holding, the Court said in Porter v. Ashmore, supra, wherein Porter contended in a habeas corpus petition that he was deprived of his constitutional freedom from unreasonable searches and seizures by the warrantless search of his home and seizure of certain gambling equipment following his arrest therein in 1965 upon a warrant charging him with occupying a house containing gambling paraphernalia, the Court said:

> "The validity of the search in this case must be determined under the rules promulgated in United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950), and Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947), both of which were overruled by *Chimel*."

In United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950), affirming a conviction of selling and possessing and concealing forged United States postage stamps with intent to defraud, and in which the question presented was the reasonableness of a

warrantless search of a one-room business office at the time of the valid arrest therein, the Court said:

"A rule of thumb requiring that a search warrant always be procured whenever practicable may be appealing from the vantage point of easy administration. But we cannot agree that this requirement should be crystallized into a *sine qua non* to the reasonableness of a search. It is fallacious to judge events retrospectively and thus to determine, considering the time element alone, that there was time to procure a search warrant. Whether there was time may well be dependent upon considerations other than the ticking off of minutes or hours. The judgment of the officers as to when to close the trap on a criminal committing a crime in their presence or who they have reasonable cause to believe is committing a felony is not determined solely upon whether there was time to procure a search warrant. Some flexibility will be accorded law officers engaged in daily battle with criminals for whose restraint criminal laws are essential.

"It is appropriate to note that the Constitution does not say that the right of the people to be secure in their persons should not be violated without a search warrant if it is practicable for the officers to procure one. The mandate of the Fourth Amendment is that the people shall be secure against *unreasonable* searches. It is not disputed that there may be reasonable searches, incident to an arrest, without a search warrant. Upon acceptance of this established rule that some authority to search follows from lawfully taking the person into custody, it becomes apparent that such searches turn upon the reasonableness under

all the circumstances and not upon the practicability of procuring a search warrant, for the warrant is not required. To the extent that Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663, requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest, that case is overruled. The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances—the total atmosphere of the case. It is a sufficient precaution that law officers must justify their conduct before courts which have always been, and must be, jealous of the individual's right of privacy within the broad sweep of the Fourth Amendment."

The *Rabinowitz* rule quite clearly was applicable to the search of Goins' motel room, and, just as clearly, the search was not unreasonable.

█ In another Assignment, the defendants contend that the court erroneously admitted in evidence certain conversations which Goins had at the police identification line-up with Mr. McDaniel and some of the officers, because he was not furnished counsel at the line-up. This refers to an incident that occurred immediately following the actual line-up procedure on the evening of November 2, 1968 when Mr. McDaniel was taken into the room where Goins was detained. When he placed his hand on Goins' shoulder to point him out to the officers, Goins said, "You've got me"; and when Mr. McDaniel pulled up his sleeve and displayed his wrist watch, Goins said, "I told you you could keep it." Suffice it to say that

this record shows, by State's exhibit number 17, that at 9:07 P.M. on November 2, 1968 Goins signed the following written statement: "I am aware of my rights. I am agreeable to standing in a line up at this time without an attorney being present."

In this Court neither of the defendants challenges the sufficiency of the evidence to warrant and support the verdict of the jury.

After a careful review of the record, we are firmly of opinion and hold that the Assignments of Error have no merit. The judgment of the trial court is affirmed.

Judge ORIS D. HYDER, a member of this Court when this case was argued and submitted, did not participate in this opinion.

DWYER, J., concurs.