**Ronnie CONNER, Plaintiff in Error,**

**v.**

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.

July 16, 1975.

Certiorari Denied by Supreme Court
Nov. 3, 1975.

M. H. Gamble, Jr., Maryville, for plaintiff in error.

R. A. Ashley, Jr., Atty. Gen., Weldon B. White, Jr., Asst. Atty. Gen., Nashville, H. Kenneth Deatherage, Dist. Atty. Gen., Kingston, John C. Crawford, III, Asst. Dist. Atty., Maryville, for defendant in error.

## OPINION

DUNCAN, Judge.

The defendant was charged in two separate indictments, each containing three counts charging burglary, larceny, and receiving and concealing stolen property. Over the defendant's objections the cases were consolidated for trial, and the defendant was found guilty under the third count of each indictment of the offense of receiving and concealing stolen property. He received a penitentiary sentence on each indictment of not less than three (3) years nor more than six (6) years, and in the court's judgment, the sentences were ordered to be served consecutively.

The defendant brings this appeal contesting his convictions and sentences, and for purposes of clarity, his assignments of error are hereby designated and summarized as follows:

1. The evidence preponderates against the verdicts.

2. The court refused to charge the law on accomplices.

3. The attorney general was erroneously permitted to argue to the jury that the recent possession of stolen property created a presumption of guilt.

4. The court erroneously charged the same thing as complained of in assignment number 3.

5. The court erred in allowing a witness for the state to testify as to a pre-trial statement the witness had made to a third party.

6. The court erred in consolidating the two cases for trial.

7. That an accurate and complete bill of exceptions was not provided to the defendant.

The above assignments are made as to both cases. The defendant additionally assigns as error:

*As to Case No. 80:*

8. That the Sony portable radio involved in this indictment was not owned by Joe D. McMurray, as alleged in the indictment.

9. That the court erred in charging the jury on the offense of receiving and concealing stolen property over the value of $100.00, contending that the proof showed the property to be valued at $100.00 or less.

10. That the verdict of the jury for receiving and concealing stolen property of a value exceeding $100.00 is contrary to the law and the evidence.

*As to Case No. 81:*

11. There was no evidence shown that the personal property alleged in the indictment was stolen.

12. The personal property alleged to be stolen was not identified, and it and the testimony concerning it should have been withdrawn from the jury.

■ In order to explain and answer the foregoing assignments, we state at the outset, that for reasons hereinafter appearing, the defendant's convictions are reversed. Further, that if there is an ultimate conviction of the defendant, we are of the opinion that there can only be one conviction for receiving and concealing stolen property growing out of the two (2) prosecutions involved herein.

Since the burglaries and resulting larcenies occurred at different times, there could have been two convictions for either of these offenses; however, the rule is different as to receiving and concealing stolen property.

The only conclusion that can be drawn from the proof and from the verdicts of the jury in these cases is that, if received at all, the defendant received the subject items of stolen property from the thief, at one and the same time. The state offers no proof, direct or circumstantial, to show that he received the items at different times.

This exact situation was present in the recent case of *Arnett Harsten and Janet Harsten v. State*, Tenn.Cr.App. (See opinion dated May 6, 1975, Jackson.) In an opinion by the Honorable John A. Mitchell, the Court held that where goods stolen from multiple department stores were found in possession of the defendants, such would give rise to only one conviction for concealing stolen property. The Court cited *Williams v. State*, 216 Tenn. 89, 390 S.W.2d 234.

In the *Williams* case, the court there held, ". . . where the goods of several owners are received or concealed as a part of a single transaction, there is only one offense of receiving or concealing stolen property."

In II Wharton's Criminal Law (Anderson) § 569, pp. 288, 289, the rule is stated thusly:

"Separate offenses are committed in receiving from the same person at different times stolen goods, knowing them to have been stolen. No distinction is made, however, when the property is received at one time, as to whether it is the property of one or several persons."

We shall discuss the defendant's first and second assignments of error together.

In his first assignment of error, the defendant contends that the evidence preponderates against the verdicts of the jury and in favor of his innocence. In his second assignment, he complains that the court refused to charge the jury on the law on accomplices. His special request for such a charge was refused by the court.

On May 15, 1974, a police monitor radio and a portable radio were stolen in a burglary at the home of Joe McMurray in Blount County. The radios were later recovered, and Mr. McMurray placed a value on the police radio at one hundred ($100.00) dollars, and valued the portable radio at sixty ($60.00) dollars.

On the same date, the home of C. L. Allen was broken into and there was stolen a black and white Truetone table model television set, a Hoover vacuum cleaner, and two (2) radios. The television set and vacuum cleaner were recovered. Mr. Allen placed a value on the television set at one hundred ($100.00) dollars and placed a value of one hundred thirty-five ($135.00) dollars on the vacuum cleaner.

On the same date, the above stolen items, with the exception of Mr. Allen's two (2) radios, were allegedly left by the defendant at the home of Mr. and Mrs. Robert Dyer. Mr. Dyer testified that the defendant and a boy came to the house, had the items in the trunk of the defendant's car, and that the defendant wanted to leave them there because he and his mother were having some trouble. Mr. Dyer said he knew the defendant and agreed that he could leave the

items in his house. Mrs. Dyer supported her husband, in part, on his testimony. Later, the items were recovered in the Dyers' home.

After the Dyers gave their statement to the police, the defendant was arrested and subsequently indicted in two cases as outlined heretofore.

It is noted that the sole evidence linking this defendant to these alleged items of stolen property was furnished by Mr. and Mrs. Robert Dyer.

The defendant insists that the court erred in not allowing the jury to decide the question of whether or not the Dyers were accomplices, and that the court should have charged the law on accomplices. In this case, if the jury had found that the Dyers were accomplices, then it would necessarily follow that a question would be involved as to whether there was sufficient corroborative proof present.

■ An accomplice is one who knowingly, voluntarily and with common intent unites with the principal offender in the commission of the crime. *Hicks v. State*, 126 Tenn. 359, 149 S.W. 1055; *Monts v. State*, 214 Tenn. 171, 191, 379 S.W.2d 34; *Moore v. State*, 1 Tenn.Cr.App. 190, 432 S.W.2d 684; *McAfee v. State*, 3 Tenn.Cr. App. 424, 426, 463 S.W.2d 141; *Pennington v. State*, Tenn.Cr.App., 478 S.W.2d 892.

In *Ripley v. State*, 189 Tenn. 681, 687, 227 S.W.2d 26, 29, the court said this:

". . . By the great weight of authority, 'the question of who are accomplices is one of law for the court when the facts as to the witness' participation are clear and undisputed; when such facts are disputed or susceptible of different inferences, the question is one of fact for the jury."

Whether one is an accomplice is a question for the jury under proper instructions, unless he so confesses. *Hicks v. State*, supra; *Ripley v. State*, supra.

■ When the facts are clear and undisputed there is no doubt but that the question concerning whether a witness is or is not an accomplice is a question of law for the court. But when the facts as to the witness' complicity are disputed and susceptible of different inferences, it is a question of fact for the jury. *Abbott v. State*, Tenn. Cr.App., 508 S.W.2d 801; *Ripley v. State*, supra.

Apparently, in the instant case, the court decided as a matter of law that the Dyers were not accomplices and thus declined to charge the jury on the law on accomplices. We do not think the issue is that clear. Neither did the attorney general nor defendant's counsel, as both argued the accomplice question to the jury in anticipation that the court would charge on it.

■ The test to be applied as to whether or not one is an accomplice is whether the alleged accomplice can be indicted for the offense. *Monts v. State*, supra; *Casone v. State*, 193 Tenn. 303, 246 S.W.2d 22; *Gann v. State*, 2 Tenn.Cr.App. 230, 452 S.W.2d 685.

■ The Dyers' testimony is suspect in many regards. First, the stolen property was found in their premises. The "inference" of possession of stolen property as showing a consciousness of guilt, unless such possession is adequately explained, which was the basis upon which the defendant was convicted, is just as applicable to the Dyers, as it would be to the defendant in this case. By reason of this legal principle the officers could have as well secured an indictment against the Dyers for receiving and concealing stolen property as they did against the defendant. The suspicious circumstances under which the property was allegedly left at their house is significant. From their own testimony, the property was concealed in the trunk of the defendant's automobile. One of the items, being a "police monitor" carries with it a suspicious character just by the very nature of the item. The items were allegedly left by the defendant in one pile in the bedroom.

The Dyers accepted a weak excuse from the defendant that he and his mother were having trouble and that was why he wanted to leave the items there.

■ Operating against the Dyers in this regard is the proposition that guilty knowledge is to be regarded as established when the circumstances surrounding the receipt of the property were such as would charge a reasonable man with notice or knowledge or would put a reasonable man upon inquiry which if pursued would disclose that conclusion. *Kessler v. State*, 220 Tenn. 82, 414 S.W.2d 115.

■ Next, from their testimony, the items were not kept together, but were placed by Mr. Dyer in different parts of the house. The television set and the vacuum cleaner were left in the bathroom. The portable radio was put into use by the Dyers' son and was located in a room upstairs. The police monitor was secreted in a closet on top of a box of clothes.

When the officers first came to the Dyers' house, they recovered all of the items except the portable radio. The Dyers did not divulge to the officers their possession of the radio, allegedly left there by the defendant at the same time as he left the other items. It was some days later that the owner of the radio, in company with one of the officers, returned and found the radio. Even if it could be said that initially, the Dyers did not have knowledge that the goods had been stolen, certainly after the officers' first visit they should reasonably have known it. By concealing or withholding the radio from the true owner thereafter such would give rise to a charge of receiving or concealing stolen property against them. The fact that they later surrendered the radio to the owner would not negate their complicity in the interim.

In II Wharton's Criminal Law (1975 Supp.), § 567, p. 36, it is stated:

"Although even when a person does not know that the property is stolen when he first acquires possession of it, it has been held that if he subsequently learns of its character and then conceals it or withholds it from the true owner, he is guilty of the offense of receiving stolen property." Citing—*People v. Scaggs*, 153 Cal. App.2d 339, 314 P.2d 793.

Further, it is significant to note that there are inconsistencies in the testimony of Mr. Dyer as compared to that of Mrs. Dyer.

Mr. Dyer testified that he had been a good friend to the defendant for over 2 years, and had seen the defendant earlier in the day, "round twelve or one o'clock" up by Everett High School; that later in the day, the defendant came to his house with the subject items, stating that he came "about five o'clock, somewhere along there, four or five o'clock"; that the defendant said he wanted to leave the items there because "him and his mother had a little trouble"; that after the items were left in the bedroom, he put the police monitor in the closet and that was where the officers found it. It should further be noted that Mr. Dyer's background reflected something less than being a law abiding citizen. The proof showed that he had been previously convicted of two (2) cases of passing forged checks some years before, and that he was, at the time of the instant trial, on probation for passing bad checks. He testified that he guessed he'd been convicted so many times for passing bad checks that he could not count them.

Mrs. Dyer testified that on the date in question, the defendant arrived at their home at "twelve or one o'clock, I guess"; that the defendant wanted to leave the items there because "I think he was going to move . . . or he was having some trouble or something 'nother"; that the police monitor was placed under the side of the bed, not in the closet, and that was where the officers found it.

Also, the Dyers gave a signed statement to the officers on May 17, 1974, stating that "Ronnie Conner and Louis Cook" had brought the items to their house on May 15th, 1974, about 4:15 p. m. Again, the

time here is different from Mrs. Dyer's testimony at the trial. Also, at the trial, both Mr. and Mrs. Dyer testified that they did not know the name of the individual who was with the defendant. It appears most significant to us that in Mrs. Dyer's testimony, she places the defendant at their home some hours before Mr. Dyer says he was there. Yet in her statement to the police, made near the time of the incident, she places the defendant at their home "about 4:15 p. m.," which is the time more in accordance with the time testified to by her husband at the trial.

Thus, from the foregoing we conclude that the facts as to the Dyers' complicity are in dispute and their testimony is susceptible of different inferences. In light of the entire record, we think the question of whether or not they were accomplices should have been left to the jury, under proper instructions from the court. If the jury found that they were accomplices, then the jury was entitled to know that the law required independent corroborative evidence. Had the jury been properly charged as to how they should view their testimony, we are unable to say that the jury would not have reached a different conclusion in these cases.

Therefore, we find that assignments of error numbers 1 and 2 are meritorious and we sustain them.

■ Since the case is being reversed and remanded for a new trial, we shall not go into great detail on the remaining assignments; however, we shall make rulings thereon as we are required to do. *Jacobs v. State*, 224 Tenn. 106, 450 S.W.2d 581.

■ In assignments 3 and 4, the defendant complains about the use of the term "presumption" by the attorney general in arguing the law on recent possession of stolen property, and further makes a similar complaint with respect to the use of the same term in the court's charge to the jury. The defendant argues that the term "inference" should have been used.

We have reviewed the argument and charge of which complaint is made and we do not find error in this regard. *Hughes v. State*, 27 Tenn. 75; *Wilcox v. State*, 50 Tenn. 110; *Humphrey v. State*, 187 Tenn. 377, 215 S.W.2d 791; *Peek v. State*, 213 Tenn. 323, 375 S.W.2d 863; *Cook v. State*, 84 Tenn. 461, 1 S.W. 254; *Thomas v. State*, 225 Tenn. 71, 463 S.W.2d 687; *Brown v. State*, Tenn.Cr.App. 489 S.W.2d 855; *Kelley v. State*, Tenn.Cr.App., 478 S.W.2d 73; *White v. State*, 210 Tenn. 78, 356 S.W.2d 411.

■ Further, in his brief under this assignment, the defendant complains that a portion of the attorney general's argument amounted to a comment on the defendant's failure to testify at the trial. We do not so interpret the attorney general's argument. The statement of which complaint is made is a reference to the fact that the defendant did not explain to the Dyers at their home as to how he came about the property. This argument was within the bounds of the evidence.

■ Assignment of error number 5, which is predicated on the testimony of Mr. Dyer, regarding the contents of his statement to Officer Atchley as to what the defendant had said was his reason for wanting to leave the property with the Dyers, is well taken. This statement was hearsay and thus should not have been admitted. Since Mr. Dyer had already testified as to what the defendant had told him as to why he wanted to leave the property there, the hearsay statement would be harmless; however, upon retrial, the court should not allow the hearsay statement to be admitted in evidence.

The defendant's complaint in assignment number 6 that the cases should not have been consolidated for trial is rendered moot by virtue of the rulings made herein.

While his contention made in assignment number 7 is likewise now rendered moot, we would state that we are of the opinion that the defendant was provided with a

substantially complete, proper and accurate bill of exceptions in this case.

■ In assignment of error number 8, the defendant contends that in Case No. 80, the portable radio was not owned by Joe D. McMurray as was alleged in the indictment.

The proof showed that Mr. McMurray had bought the radio for his mother and that it was located in their jointly shared home, which home was owned by Mr. McMurray.

We think the proof that the radio was in the house, owned and occupied by Mr. McMurray, shows that it was in his possession, and that as such, it would have been proper to allege ownership in either Mr. McMurray or his mother. *Watson v. State,* 207 Tenn. 581, 341 S.W.2d 728; *Stafford v. State,* Tenn.Cr.App., 489 S.W.2d 46; *Campbell v. State,* 2 Tenn.Cr.App. 39, 450 S.W.2d 795; *Fiedler v. State,* Tenn.Cr.App., 479 S.W.2d 814.

■ In his ninth assignment, the defendant contests, as it would pertain to Case No. 80, that portion of the court's charge on the offense of receiving and concealing stolen property exceeding $100.00 in value. The defendant says the proof shows a value of the property to be $100.00 or less.

However, the proof is to the contrary. McMurray testified that his police monitor was valued at $100.00 and his portable radio was valued at $60. In view of our ruling under the eighth assignment, the jury was entitled to consider the combined value of both the police monitor and the portable radio, and it was up to them to decide whether the property exceeded or did not exceed $100.00 in value. There was no error in the court's charge.

■ Since the subject matters involved in assignments 10, 11, and 12 concern the proof and since the evidence may be entirely different upon the retrial, we will only state that as to assignment number 10, we have stated under assignment number 9 our opinion as to the value of the goods in-

volved in Case No. 80; assignment number 11 is not meritorious, as we think the proof does show the property involved in Case No. 81 was stolen; and likewise we conclude assignment number 12 is unmeritorious, as we believe that from a consideration of all the evidence, both direct and circumstantial, the property items in Case No. 81 were sufficiently identified.

For the guidance of the trial court we make the following additional comments:

On remand, the defendant may only be tried on one of the indictments involved herein. The state may elect either the indictment in Case No. 80 or Case No. 81, but as to whichever indictment he is tried upon, his trial should be limited to the third count charging receiving and concealing stolen property. This is necessary since by the verdicts of the jury finding the defendant guilty of receiving and concealing stolen property, then by operation of the law, the defendant has been acquitted of the burglary and larceny counts in each indictment.

■ The settled law of this State is that a special verdict upon a single count of indictment is given the effect of an acquittal upon the other counts to which the jury did not respond, and the accused may not again be put to trial upon those other counts in the indictment. *Harvey v. State,* 213 Tenn. 608, 376 S.W.2d 497; *Franklin v. State,* 202 Tenn. 666, 308 S.W.2d 417; *Marshall v. State,* Tenn.Cr.App., 497 S.W.2d 761.

■ We further note that upon the retrial of one of these indictments, proof, if any, as to the possession by the defendant of the items listed in the other indictment and their stolen character would be admissible in evidence. We say this because all of the items involved in both indictments were comingled, were found together, and involve the same transaction. See *Coffman v. State,* 3 Tenn.Cr.App. 634, 466 S.W.2d 241; *Lacey v. State,* Tenn.Cr.App., 506 S.W.2d 809; *Mays v. State,* 145 Tenn. 118, 238 S.W. 1096.

However, the question of values, as it would pertain to the degree of the offense (exceeding or not exceeding $100.00), would be limited solely to the value of the items listed in the indictment being tried.

 Additionally, if the jury should find the defendant guilty on the retrial, the trial court should see that they specify which offense, i. e. either receiving stolen property or concealing stolen property, since these two offenses are separate and distinct offenses. *Deerfield v. State*, 220 Tenn. 546, 420 S.W.2d 649.

Therefore, for the reasons stated herein, we reverse the defendant's convictions in these cases, and remand same for a new trial.

DWYER and O'BRIEN, JJ., concur.