# IN THE COURT OF CRIMINAL APPEALS OF

## TENNESSEE

## AT KNOXVILLE

## SEPTEMBER 1999 SESSION



**FILED**

November 15, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | |
|---|---|
| **STATE OF TENNESSEE,** ) | |
| ) | |
| **Appellee,** ) | **C.C.A. No. 03C01-9902-CR-00075** |
| ) | |
| **vs.** ) | **Greene County** |
| ) | |
| **J. D. EDWARD EALEY,** ) | **Hon. James E. Beckner Judge** |
| ) | |
| **Appellant.** ) | **(Theft)** |
| ) | |

**FOR THE APPELLANT:**

**D. CLIFTON BARNES**
Assistant Public Defender
1609 College Park Drive, Box 11
Morristown, TN 37813-1618

**FOR THE APPELLEE:**

**PAUL G. SUMMERS**
Attorney General & Reporter

**CLINTON J. MORGAN**
Counsel for the State
425 Fifth Avenue North
Nashville, TN 37243-0493

**C. BERKELEY BELL, JR.**
District Attorney General
109 S. Main Street
Greeneville, TN 37743

**CECIL MILLS**
**ERIC D. CHRISTIANSEN**
Asst. District Attorneys General
North Main Street
Greeneville, TN 37743

**OPINION FILED: _____**

**AFFIRMED**

**JAMES CURWOOD WITT, JR., JUDGE**

**OPINION**

A Greene County jury acquitted the defendant, J. D. Edward Ealey, of aggravated burglary but convicted him of theft of property less than $500 in value, a Class A misdemeanor, and recommended a $500 fine. The trial judge imposed the fine and an incarcerative sentence of eleven months and twenty-nine days, of which the defendant must serve 75 percent before becoming eligible for rehabilitative programs. The defendant appeals and challenges the sufficiency of the convicting evidence and the sentence imposed by the trial court. We affirm.

The victim, Maudie Franklin, lived in an apartment next door to the defendant's apartment. On June 7, 1996, the defendant came to her apartment and stated that he needed to raise a total of $300. He proposed to trade a gun for her television set, which he hoped to sell. The victim declined to sell or trade a gun for her personal property, and the defendant "threatened [the victim's] stuff in [her] home." The defendant persisted in asking the victim to give him not only her television, but also her video cassette recorder. When the victim continued to refuse his request, he threatened to "take a tire tool and come in and get [the victim]."

After the defendant left the victim's apartment in the late afternoon or early evening of June 7, the victim proceeded with her plans to go to her son's home to spend the night. When she returned to her apartment at 7:00 a.m. the following day, she found her backdoor broken open and found her television, VCR, stereo, audio tapes, and some telephone equipment missing. The police investigated the break-in but found no witnesses nor any readable fingerprints.

Rick Tweed, the defendant's employer in 1996, testified that at different times in the weeks prior to October 1996, the defendant sold him a television set, a VCR, and a number of tapes. The tapes had the name "Maudie Franklin" inscribed on them, and Tweed testified that the defendant explained that Franklin was his ex-girlfriend and that he desired to dispose of the tapes before his wife saw them. Tweed retained the television and VCR but gave the tapes to his brother, Tim Tweed, whose in-laws coincidentally were related to Maudie Franklin. After Tweed's in-laws discovered Franklin's tapes, she reclaimed them and alerted the police to the new developments in the case. The police recovered the television

and VCR from Rick Tweed, and the victim identified these items by model number and by some scratches or marks on the VCR which she recognized. Also, even though the serial numbers had been removed from the two appliances, the police located a serial number hidden on the television chassis and confirmed that it matched the number of the television purchased by Franklin.

The only defense witness was Brenda Ealey, the defendant's wife, who testified that on the night that the Franklin home was burglarized, her husband was at home all night and did not leave. The defendant did not testify.

The jury acquitted the defendant of the burglary of Franklin's apartment but convicted him of theft of the property.

## I.

It is well established that a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the state and resolves all conflicts in favor of the theory of the state. State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978); State v. Townsend, 525 S.W.2d 842, 843 (Tenn. 1975). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978).

Moreover, a verdict against the defendant removes the presumption of innocence and raises a presumption of guilt on appeal, State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973); Anglin v. State, 553 S.W.2d 616, 620 (Tenn. Crim. App. 1977), which the defendant has the burden of overcoming. State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977).

Most significantly, where the sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 2782 (1979); Tenn. R. App. P. 13. See also, State v. Williams, 657 S.W.2d 405 (Tenn. 1983). This rule applies to findings based

on both direct and circumstantial evidence. State v. Thomas, 755 S.W.2d 838, 842 (Tenn. Crim. App. 1988). Circumstantial evidence alone may be sufficient to convict one of a crime. State v. Boling, 840 S.W.2d 944, 947 (Tenn. Crim. App. 1992).

The defendant's challenge to the sufficiency of the evidence is that Rick Tweed was an accomplice to the theft, and his testimony, which was the only evidence to place the defendant in possession of the stolen property, was uncorroborated.

In Tennessee, a conviction may not be based upon the uncorroborated testimony of an accomplice. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). An accomplice is an individual who knowingly, voluntarily and with common intent participates with the principal offender in the commission of an offense. State v. Lawson, 794 S.W.2d 363, 369 (Tenn. Crim. App. 1990). "'[A] common test [of complicity] is whether the alleged accomplice could have been indicted for the offenses.'" State v. Anderson, 985 S.W.2d 9, 16 (Tenn. 1997) (quoting State v. Perkinson, 867 S.W.2d 1, 7 (Tenn. Crim. App. 1992)). Some cases say the test of complicity is whether the alleged accomplice could have been convicted of the offense. See, e.g., Lawson, 794 S.W.2d at 369.

When the facts are undisputed regarding a witness's participation in the crime, whether he is an accomplice is a question of law for the trial court. Perkinson, 867 S.W.2d at 7. However, when the facts are disputed or susceptible to different inferences, it is a question for the jury. Conner v. State, 531 S.W.2d 119, 123 (Tenn. Crim. App. 1975). The jury determines whether an accomplice's testimony has been sufficiently corroborated. Pennington v. State, 478 S.W.2d 892, 898 (Tenn. Crim. App. 1971) (citation omitted). The general rule is that

> there must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence be slight and entitled, when standing

4

alone, to but little consideration.
Hawkins v. State, 4 Tenn. Crim. App. 121, 133, 469 S.W.2d 515, 520 (Tenn. Crim. App. 1971) (citations omitted).

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103 (1997).

Viewed in the light most favorable to the state, we conclude that the evidence is sufficient to support the theft conviction. Assuming *arguendo* that Rick Tweed may be considered an accomplice,[1] the evidence contained adequate corroboration of his testimony, despite the fact that no other evidence in the record directly places the defendant in possession or control of the stolen property. Circumstantially, the nature of the defendant's visit to Franklin's apartment the afternoon of June 7, 1996, the threats he made while there, and the short interval between the threats and the theft all implicate him in the theft. This evidence is sufficient to corroborate Rick Tweed's testimony because it points to the defendant as the thief. See State v. Caldwell, 977 S.W.2d 110, 116 (Tenn. Crim. App. 1997), perm. app. denied (Tenn. 1998). Moreover, the evidence as a whole amply supports the conviction.

## II.

In the defendant's next issue, he argues that the sentence is excessive because the trial court misapplied enhancement factor (15), that the defendant abused the position of private trust which significantly facilitated the theft. See Tenn. Code Ann. § 40-35-114(15) (1997).

In misdemeanor sentencing, a separate sentencing hearing is not mandatory but the court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of the sentence. Tenn. Code Ann. §40-35-302(a) (Supp. 1996). Misdemeanor sentences must be specific and

---

[1] The record does not reflect whether or how the jury was instructed as to Tweed's alleged complicity. The defendant claims no error in the trial court's jury instructions, and the instructions are not included in the record on appeal.

in accordance with the principles, purpose, and goals of the Criminal Sentencing Reform Act of 1989. Tenn. Code Ann. §§40-35-104, 302 (Supp. 1996); Tenn. Code Ann. §40-35-117 (1990); State v. Palmer, 902 S.W.2d 391, 393 (Tenn. 1995). The misdemeanor offender must be sentenced to an authorized determinant sentence with a percentage of that sentence designated for eligibility for rehabilitative programs. Generally, a percentage of not greater than 75% of the sentence should be fixed for a misdemeanor offender; however, a DUI offender may be required to serve 100% of his sentence. Palmer, 902 S.W.2d at 393-94. In determining the percentage of the sentence, the court must consider enhancement and mitigating factors as well as the legislative purposes and principles related to the sentencing. Id.

Upon service of that percentage, the administrative agency governing the rehabilitative programs determines which among the lawful programs available is appropriate. Tenn. Code Ann. § 40-35-302(d) (1997). The trial court retains the authority to place the defendant on probation either immediately or after a period of periodic or continuous confinement. Tenn. Code Ann. §40-35-302(e). The legislature has encouraged courts to consider public or private agencies for probation supervision prior to directing supervision by the Department of Correction. Tenn. Code Ann. §40-35-302(f). The governing statute provides the trial court has continuing jurisdiction in misdemeanor cases and a wide latitude of flexibility. See, e.g., State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997). "The misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence." State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994).

The trial court proceeded to sentence the defendant immediately following the return of the jury's verdict. The trial court applied enhancement factor (1), that the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. See Tenn. Code Ann. § 40-35-114(1) (1997). The presentence report revealed that the defendant had a 1990 felony conviction of theft and four previous misdemeanor convictions involving driver's license and vehicle registration offenses. The court also applied factor (15) that the defendant abused a position of private trust. The court applied mitigating factor (1), that the defendant's criminal conduct neither caused nor threatened serious bodily injury. See Tenn. Code Ann. § 40-35-113(1)

6

(1997). The court declined to apply any other mitigating factors.

The court concluded that the enhancement factors outweighed the mitigating factor and resulted in a maximum sentence of eleven months, twenty-nine days. The court then recited its consideration of the sentencing principles found in Tennessee Code Annotated sections 40-35-102 and 103. The court concluded that the "circumstances of the offense, the prior record, the deterrence consideration, history of drug abuse, are such that probation should not be granted for the offense." Accordingly, the court imposed the maximum percentage of 75 percent to be served in confinement before the defendant became eligible for rehabilitative programs.

The defendant argues, "[T]here was no private trust involved," and we agree. The record establishes that the defendant, although the victim's neighbor, was really nothing more than a casual visitor in the victim's home. Nothing suggests that the victim placed confidence in or relied upon the defendant in any way. Thus, the proof reveals no basis for concluding that a private trust existed. See State v. Kissinger, 922 S.W.2d 482, 489 (Tenn. 1995) (defendant who was "a casual visitor" in aggravated sexual battery victim's home and an acquaintance of the victim, but who occupied no "relationship to [the victim] that promoted confidence, reliability, or faith in him," was not in a position of private trust with the victim for purposes of factor (15)). The trial court should not have applied factor (15).

This court's review of a lower court's sentencing determinations is conducted with a presumption that those determinations are correct. Tenn. Code Ann. § 40-35-401(d) (1997). Generally, in a misdemeanor case, the presumption will apply despite the sentencing court's failure to make specific findings on the record. State v. Lauren E. Leslie and Janie Whitehead, No. 03C01-9804-CR-00125, slip op. at 4 (Tenn. Crim. App., Knoxville, Mar. 23, 1999), perm. app. denied (Tenn. 1999); see State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998). However, in imposing a misdemeanor sentence, a court is required to act consistently with the purposes and principles of the sentencing law, and particularly when establishing the percentage of service of a misdemeanor sentence, the court is required to consider the enhancement and mitigating factors. Tenn. Code Ann. § 40-35-302 (1997). Even though the trial court need not make findings, it is required to consider

7

the enhancement and mitigating factors, at least in the imposition of a percentage of service. When the record reflects that findings *were* made and that, with respect to an enhancement factor, they are in error, the presumption of correctness obviously should not apply.

Accordingly, we review the sentencing determination *de novo*. The record establishes that the defendant has received three convictions for driving on a revoked or suspended license, a conviction for violating the vehicle registration law, and, more significantly, a 1990 conviction for theft. Moreover, this court has said that the sentencing court's "determination that the jury acted with exceptional leniency is a reasonable influence upon the court in making its findings that confinement" of the defendant is appropriate. State v. Michael D. Frazier, No. 03C01-9602-CR-00084, slip op. at 12 (Tenn. Crim. App., Knoxville, Jun. 4, 1997). In the present case, the jury acquitted the defendant of the burglary which resulted in the theft of Franklin's property, despite convicting him of the theft.

Based upon the proof adduced at trial and the presentence report, especially the defendant's prior theft conviction, we conclude that a maximum misdemeanor sentence to be served at 75% is an appropriate sentence.

Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

CONCUR:

_____
GARY R. WADE, PRESIDING JUDGE

_____
JERRY L. SMITH, JUDGE

8