# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### November 5, 2002 Session

## STATE OF TENNESSEE v. JASON R. GARNER

**Direct Appeal from the Criminal Court for Shelby County**
**No. 96-10364, 65    Carolyn Wade Blackett, Judge**

———————————

**No. W1999-01679-CCA-R3-CD  - Filed March 14, 2003**

———————————

The Appellant, Jason R. Garner, appeals his conviction by a Shelby County jury of second degree murder and especially aggravated robbery.  The convictions arose from Garner's involvement in the robbery and shooting of Charles Bledsoe.  Garner received consecutive sentences of twenty years for second degree murder and twenty years for especially aggravated robbery.  On appeal, Garner argues that: (1) the evidence was insufficient to sustain his convictions; (2) the convictions are "irreconcilable;" (3) the trial court erred by allowing the State to file untimely notice of sentence enhancements; (4) the trial court erred by failing to submit an instruction with regard to accomplice testimony to the jury; and (5) his sentences were excessive and the imposition of consecutive sentences was error.  After review, we find these issues without merit.  Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JOE G. RILEY and ROBERT W. WEDEMEYER, JJ., joined.

Michael E. Scholl, Memphis, Tennessee, for the Appellant, Jason R. Garner.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; P. Robin Dixon, Jr., Assistant Attorney General; William L. Gibbons, District Attorney General; and Paul Goodman, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

At approximately 11 a.m. on September 12, 1995, the Appellant shot and killed the victim, Charles Bledsoe, and took an undetermined amount of money from the victim's person.  The proof established that both men had been staying at a residence occupied by the Appellant's girlfriend,

Denise Thacker, and her family. Ms. Thacker was pregnant at the time with the Appellant's child. The testimony established that the victim had introduced Ms. Thacker to a man who could get her a job as a topless dancer, had supplied her with marijuana while she was pregnant, and had attempted to involve her in a plot to rob the "white man" she was prostituting herself to. The Appellant and Ms. Thacker both testified that the Appellant was aware of these facts and was upset with the victim's involvement in these activities.

Both men left the residence separately that morning, with the Appellant going to a friend's house for breakfast. Later, the Appellant visited a neighbor's house and found a group present on the porch, including the victim and a man named Joe. The victim was attempting to purchase an expensive herringbone necklace from Joe for $100. Joe refused and walked away. The Appellant told the victim that he knew Joe and he would try to bargain with him for the necklace.

At that point, the victim handed his .22 caliber pistol to the Appellant and instructed him to rob Joe of the necklace. According to the Appellant, he "snapped" because of all the "stuff this man was doing" with his girlfriend, and he turned and shot the victim in the chest with the gun. The victim then ran around the house and jumped a fence, with the Appellant following him and continuing to fire the pistol. At some point, the victim collapsed to the ground from the gunshot. In his statement to the police, the Appellant stated that the victim, after falling, asked if the Appellant wanted his money and then threw the money from his pockets onto the ground. The Appellant shot the victim twice more, picked up the money, and walked away.

The Appellant returned to the Thacker residence, where he hid the gun in an upstairs closet. He then paid someone to take him to Whitehaven, where he went to the apartment of Shirley Washington. Present at the apartment were Ms. Washington's three children: Yolanda, Alethia, and Samuel.

According to Yolanda's testimony, the Appellant told her that he had pulled a "stang" or robbery and had shot the victim. Yolanda testified that the Appellant told her he shot the victim after instructing the victim to "drop off" the money. After taking the victim's money, "[the Appellant] said he had shot [the victim] again." He also gave each of the three children part of the stolen money. They all proceeded to Southland Mall, where they made several purchases. After returning to Ms. Washington's apartment, the Appellant went upstairs to lay down, and Yolanda visited Susie Williams' apartment, which was two doors away. Ms. Williams was the victim's aunt and, when Yolanda told her that the Appellant was responsible for the shooting, Ms. Williams called 911. Ms. Williams related that, while calling the police, the Appellant appeared outside her front door and she heard the Appellant state, "Charles Bledsoe better know who he's fucking with. I shot him like a rabbit. I saw smoke from his body and it gave me hype and I kept popping that mother fucker." The police later arrived at Ms Washington's apartment and instructed the Appellant to come down. He surrendered to them without incident, and was placed under arrest. The post-mortem examination established that the victim's cause of death resulted from gunshot wounds to the neck and chest. In addition, the victim sustained a gunshot wound to his left thigh.

While in jail, the Appellant was also questioned about a separate murder involving his Gangster Disciples acquaintances. The Appellant made a statement regarding his street knowledge of that crime. During this statement, the investigator asked if he had any knowledge of other murders. The Appellant responded with information about the current crime. He said that he had heard on the street the victim had been ordered by a higher Gangster Disciple to kill the Appellant. The Appellant then made the statement that this was the real reason he had killed the victim.

On September 24, 1996, a Shelby County Grand Jury indicted the Appellant for first degree felony murder and especially aggravated robbery. On May 7, 1999, a jury returned convictions for second degree murder and especially aggravated robbery. A sentencing hearing was subsequently held on November 23, 1999, and the trial court applied three enhancement factors and, after finding that the Appellant was a dangerous offender, sentenced the Appellant to consecutive sentences of twenty years for second degree murder and especially aggravated robbery. The Appellant's motion for new trial was subsequently denied, with this appeal following.

## Analysis

### I. Sufficiency of the Evidence

When an accused challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both. *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990). This court does not reweigh or re-evaluate the evidence, and we are required to afford the State the strongest legitimate view of the proof contained in the record, as well as all reasonable and legitimate inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of witnesses and the value to be given to the evidence, as well as factual issues raised by the evidence, are solved by the trier of fact, not this court. *Id.* A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State. *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant bears the burden of demonstrating that the evidence is insufficient as a matter of law to support his conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

#### A. Second Degree Murder

The Appellant argues that the evidence presented at trial is insufficient to support his conviction for second degree murder, as the evidence at best supports no greater offense than

voluntary manslaughter. In this regard, we note that in *State v. Williams*, 38 S.W.3d 532, 538 (Tenn. 2001), our supreme court observed that in comparing the "second degree murder and voluntary manslaughter statutes, the essential element that now distinguishes these two offenses (which are both 'knowing' killings) is whether the killing was committed 'in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner.'"

In the present case, the Appellant testified that he shot Charles Bledsoe because he went into a rage and "snapped." He argues that the State failed to refute the proof he offered to show that the killing of Charles Bledsoe was accomplished while in a state of passion aroused by adequate provocation. The Appellant asserts that he "snapped" because of Bledsoe's actions of introducing his girlfriend to a topless dancing connection, providing her with marijuana while pregnant, attempting to involve her in a robbery of the man she was actively prostituting herself to, and giving the Appellant a weapon in order to rob his friend. He argues this combined to form the necessary adequate provocation. However, the jury was not obligated to accept the Appellant's testimony for the motive of the killing, even if unrefuted. Whether the killing of one person by another occurs under circumstances which justify a verdict of second degree murder or voluntary manslaughter is a question of fact to be determined by the jury under proper instructions and from a consideration of all the evidence.

By convicting him of second degree murder, the jury obviously rejected the Appellant's assertion that the victim was killed while the Appellant was in a state of passion produced by adequate provocation. Such decisions are within the exclusive province of the jury and will not be disturbed by this court on appeal, as we are required to presume that the jury has drawn all reasonable inferences from the evidence in favor of the State. Moreover, a rational trier of fact could have reasonably concluded that the Appellant did not kill in a state of passion. One of the Appellant's own statements to the police indicated that he shot the victim because he heard the victim had been ordered to kill him by a Gangster Disciple governor. In addition, Yolanda Barnes testified that the Appellant told her he had pulled a "stang." Thus, we find this issue is without merit.

### B. Especially Aggravated Robbery

The Appellant contends that the evidence was also insufficient to support his conviction for especially aggravated robbery. In order to convict a defendant of especially aggravated robbery, the State must prove that: (1) the defendant intentionally or knowingly took the property of another person by violence or putting the victim in fear; (2) the defendant acted with the intent to deprive the owner of the property; (3) the robbery was accomplished with a deadly weapon; and (4) the victim suffered serious bodily injury. Tenn. Code Ann. §§ 39-13-401(a), -403(a). The Appellant argues that the evidence presented supports only the crime of theft because the State failed to introduce any evidence that the Appellant formed the intent to rob the victim until after the victim was shot.

We note initially that this court has held that "the intent to steal need not exist prior to or concurrently with the shooting in a case in which the defendant is charged with especially aggravated robbery." *State v. Wade P. Tucker*, No. M2001-02298-CCA-R3-CD (Tenn. Crim. App. at Nashville, July 17, 2002), *perm. to appeal denied*, M2001-02298-SC-R11-CD (Dec. 23, 2002). Accordingly, the State need not prove that the defendant assaulted the victim for the purpose of theft.

Even assuming that the State was required to prove that the intent existed before the attack on a victim, we would find the Appellant's argument without merit. The law is well-settled that a jury may infer a defendant's intent from the surrounding facts and circumstances. *State v. Lowery*, 667 S.W.2d 52, 57 (Tenn. 1984). In most cases, circumstantial evidence is the only evidence available for discerning a defendant's *mens rea*. *Hall v. State*, 490 S.W.2d 495, 496 (Tenn. 1973). When an act of assault precedes the act of theft, a jury may reasonably infer from a defendant's actions immediately after the assault that the defendant intended to commit the theft prior to, or concurrently with, the assault. *State v. Buggs*, 995 S.W.2d 102, 108 (Tenn. 1999).

From our review of the evidence, it is clear that the State had overwhelming proof that the Appellant shot and killed the victim with a deadly weapon. The proof further established that the Appellant took Charles Bledsoe's money, thus depriving him of his property. It was established that the Appellant went on a spending spree with the money a very short time after the incident ending Bledsoe's life. In addition, there was the statement made by the Appellant to Yolanda Barnes that he had pulled a "stang" or robbery and that he shot the victim <u>after</u> instructing him to "drop-off" his money. We find this evidence more than sufficient for the jury to conclude that the Appellant had the intent to rob the victim. Thus, the evidence is sufficient to support the conviction.

## II. Convictions Irreconcilable

The Appellant next contends that the jury verdicts were impermissibly inconsistent and, therefore, "a legal impossibility." The Appellant was indicted for felony murder under the theory that the murder was committed during the perpetration of a robbery. The jury acquitted the Appellant of felony murder, instead finding him guilty of the lesser offense of second degree murder and the separate charge of especially aggravated robbery. Specifically, the Appellant argues that the jury's apparent inability to find the underlying felony necessary for a felony murder conviction preponderates against a finding of guilt as to especially aggravated robbery. We conclude otherwise.

The rule in Tennessee is that consistency of verdicts on multiple-count indictments is not required. *Wiggins v. State*, 498 S.W.2d 92, 93-94 (Tenn. 1973). Each count is treated as a separate indictment. *Id*. This is the case even when the jury's findings on one count necessarily negates the state's proof as to another count. *Id*. at 93. Thus, the verdicts will stand as returned provided that the proof of guilt on each count, considered separately, is sufficient to sustain a conviction. *Id*. at 94.

Having previously determined that the evidence was sufficient with regard to each conviction, we find that the alleged inconsistencies in the jury's verdicts are of no import. This issue is, therefore, without merit.

## III. Filing Notice of Sentence Enhancement

The Appellant argues that he should be granted a new sentencing hearing because the State's notice to seek enhanced punishment was not received until the second day of *voir dire*. The Appellant contends that this does not comply with the notice requirements of Tennessee Code Annotated § 40-35-202(a) and Rule 12.3 of the Tennessee Rules of Criminal Procedure. According to the Appellant's interpretation of these rules, the State was required to give notice of enhancement factors at least ten days before trial. We find this argument misplaced.

Under section 40-35-202(a), "[i]f the district attorney general believes that a defendant should be sentenced as a multiple, persistent or career offender, the district attorney general should file a statement thereof with the court and defense counsel not less than ten (10) days before trial." Tenn. Code Ann. § 40-35-202(a) (1997). By its very terms, this statute only applies in situations in which the State seeks to have the court sentence a defendant in a greater range, not situations in which the State seeks to have the court enhance a sentence within a range. *State v. Vickie R. Herron* and *Wanda L. Griffin*, No. 02C01-9702-CR-00067 (Tenn. Crim. App. at Jackson, Dec. 31, 1998). In fact, section 40-35-202(b) states that "[i]n all cases following a finding of guilt, the court may require that . . . the district attorney general file a statement with the court setting forth any enhancement or mitigating factors the district attorney general believes should be considered by the court." Tenn. Code Ann. § 40-35-202(b)(1) (1997). Thus, section 40-35-202 clearly allows the filing of enhancement factors "after a finding of guilt."

Under Rule 12.3, "written statements of the district attorney giving notice that the defendant should be sentenced to an enhanced punishment, for an especially aggravated offense, and/or as a persistent offender shall be filed not less than ten (10) days prior to trial." Tenn. R. Crim. P. 12.3(a). This rule applies to notice under section 40-35-202(a), not to notice of enhancement factors. Advisory Commission Comments, Tenn. R. Crim. P. 12.3; *State v. Lowe*, 811 S.W.2d 526, 527 (Tenn. 1991) (stating that Rule 12.3 applies to notice under section 40-35-202(a)).

The Appellant was sentenced as a Range I standard offender. In filing notice of enhancement factors, the State sought only to have the court increase the Appellant's sentence within that range. Accordingly, we find this issue is without merit.

## IV. Accomplice Instruction

The Appellant contends that the trial court erred by not submitting an accomplice instruction to the jury with regard to the witness, Yolanda Barnes, because of her participation in the crime. The Appellant argues that she was an accessory after the fact to the crime and, thus, an accomplice. As

such, he contends that any testimony she gave about the Appellant's involvement should have been corroborated in order for the jury to use it as evidence to convict the Appellant.

First, we observe that there was an abundance of evidence, independent of that presented by the witness Barnes, which would have supported the jury's verdict. Second, we find that the Appellant's argument that Barnes was an accomplice is misplaced. An accomplice is one who knowingly, voluntarily, and with common intent unites with the principal offender in the commission of a crime. *Clapp v. State*, 30 S.W. 214, 216 (Tenn. 1894); *Conner v. State*, 531 S.W.2d 119, 123 (Tenn. Crim. App. 1975). We note that the test generally applied in determining whether a witness is an accomplice is whether the alleged accomplice could be indicted for the same offense charged against the defendant. *Monts v. State*, 379 S.W.2d 34, 43 (Tenn. 1964); *State v. Green*, 915 S.W.2d 827, 831 (Tenn. Crim. App. 1995); *State v. Lawson*, 794 S.W.2d 363, 369 (Tenn. Crim. App. 1990). In this state, if the offense in question was not committed by the person's own conduct, the person may, nonetheless, be criminally responsible as a principal to the offense if the person "solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2). The proof in this case fails to establish that Barnes solicited, directed, aided, or attempted to aid the Appellant in committing murder and especially aggravated robbery. Her actions in allowing the Appellant into her home after the crimes were committed, going shopping with the stolen money and receiving part of the proceeds for herself, do not make her a principal to the offense of murder or robbery of the victim. Thus, the Appellant's argument that it was error for the trial court not to submit an accomplice instruction to the jury is without merit, as the facts do not demonstrate that Barnes was an accomplice.

## V. Sentencing

The Appellant argues that the trial court excessively sentenced him by misapplying enhancing factors, failing to apply relevant mitigating factors, and ordering that his sentences be served consecutively. When an accused challenges the length, range, or manner of sentence, this court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *Ashby*, 823 S.W.2d at 169. When conducting a *de novo* review of a sentence, this court must consider: (a) the evidence, if any, received at trial and the sentencing hearing; (b) the pre-sentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the Appellant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210 (1997); *Ashby*, 823 S.W.2d at 168. Furthermore, we emphasize that facts relevant to sentencing must be established by a preponderance of the evidence and not beyond a reasonable doubt. *State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000).

If our review reflects that the trial court, following the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law and made findings of fact that are adequately supported by the record, then we may not modify the sentence, even if we would have preferred a different result. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). However, where the trial court fails to comply with the statutory provisions of sentencing, appellate review is *de novo* without a presumption of correctness.

For standard offenders, the appropriate sentence range for a class A felony is fifteen to twenty-five years. Tenn. Code Ann. § 40-35-112(a)(1) (1997). The presumptive sentence is the midpoint within the range, if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c) (1997). The presumptive sentence is then increased for applicable enhancing factors and decreased for applicable mitigating factors. The Appellant was sentenced as a standard Range I offender to serve twenty-year terms for both the second degree murder and the especially aggravated robbery convictions, both class A felonies.

### A. Enhancement Factors

The Appellant asserts that the trial court's application of enhancement factors (1), the defendant had a previous history of criminal convictions or criminal behavior; (5), the defendant treated or allowed a victim to be treated with exceptional cruelty; and (10), the defendant had no hesitation about committing a crime when the risk to human life was high, was error.[1] Tenn. Code Ann. § 40-35-113 (1997).

The record established that the Appellant, only twenty-two when these crimes were committed, already had a previous criminal history. The Appellant's juvenile record shows an adjudication for shoplifting in 1988, followed by a delinquency adjudication for aggravated robbery two years later for which he was committed to the Tennessee Department of Youth Development. In addition, the Appellant's adult record contained additional convictions for theft and for a weapons offense. Accordingly, we find application of enhancing factor (1) was proper. Moreover, following *de novo* review, we find factor (20) applicable based upon the Appellant's adjudication of delinquency for aggravated robbery as a juvenile.

The Appellant also argues that enhancement factor (5), the victim was treated with unusual cruelty, should not have been applied. Our supreme court has held that before this enhancement factor may be applied, the facts must support a "finding of cruelty under the statute 'over and above' what is required to sustain a conviction for [the] offense." *State v. Arnett*, 49 S.W.3d 250, 258 (Tenn. 2001). "[S]uch evidence must 'denote[] the infliction of pain or suffering inflicted for its own sake or from the gratification derived therefrom, and not merely pain or suffering inflicted as a means of accomplishing the crime charged.'" *Id.* (quoting *State v. Kelly Haynes*, No. W1999-01485-

---

[1] We note that because of recent renumbering of the enhancements factors under Tenn. Code Ann. § 40-35-114, the correct enhancement numbers are now (2), (6), and (11).

CCA-R3-CD (Tenn. Crim. App. at Jackson, Mar. 14. 2000)). Application of this factor has been upheld based on extensive physical or psychological abuse or torture. *Id.* The trial court should "state what actions of the defendant, apart from the elements of the offense, constituted 'exceptional cruelty.'" *State v. Poole*, 945 S.W.2d 93, 98 (Tenn. 1997) (quoting *State v. Goodwin*, 909 S.W.2d 35, 45 (Tenn. Crim. App. 1995)).

The trial court based its application of this enhancer on the fact that the Appellant "chased the victim and then shot him several more times after the initial encounter." We disagree that this is sufficient to enhance the Appellant's sentence. No evidence of physical or psychological abuse or torture was established. The evidence showed that the Appellant shot the victim, who then ran, and the Appellant pursued him in order to complete his crime. Thus, we conclude that these facts, without more, do not permit application of factor (5).

The Appellant also contends that the trial court erred in applying enhancement factor (10), the Appellant had no hesitation about committing a crime when the risk to human life was high. This court has concluded that "[a]lthough factor (10) is inherent in every homicide case relative to the victim, the trial court may consider this factor when the defendant endangers the lives of people other than the victim." *State v. Kelley*, 34 S.W.3d 471, 480 (Tenn. Crim. App. 2000). Although the trial court is not clear on its reasoning supporting application of this factor, we conclude from the record that this enhancer is applicable. The Appellant, by his own testimony, while in a rage, was racing through a residential neighbor, in and out of various yards, firing a gun at a fleeing target. Testimony established that people were exposed to the gun fire during the shooting spree. These include Margaret Lambert, who was standing in front of her window; Albert Thacker, who only re-entered his residence *after* he heard gunfire; and other unnamed individuals standing on the porch with the Appellant and the victim when the shooting commenced. Any of the stray bullets fired by the Appellant could have wounded these or other individuals in the area. We find this sufficient to establish application of enhancing factor (10).

We thus find that the sentence should have been based on the application of three enhancement factors: (1), (10), and (20).

## B. Mitigating Factors

The Appellant further argues that the trial court's sentencing decision was improper because the court failed to apply applicable mitigating factors. The Appellant asserts application of the following factors: (2) the Appellant acted under strong provocation; (3) substantial grounds exist tending to excuse or justify the Appellant's criminal conduct, though failing to establish a defense; (11) the Appellant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated his conduct; and (12) that the Appellant acted under duress or under the domination of another person, even though the duress or the domination of another person is not sufficient to constitute a defense to the crime. Tenn. Code Ann. § 40-35-113 (2), -(3), -(11), -(12). The trial court denied application of these factors "primarily because of the facts that were adduced in the case that you followed this victim

and shot him and continued to shoot him." We agree with the trial court that these factors were not established. The Appellant shot the victim with his own gun, proceeded to chase him through a residential neighborhood while shooting at him, and then fatally shot him as he lay disabled. We find, as did the trial court, that the Appellant's conduct manifested a sustained intent to commit these crimes and that application of the requested mitigators was precluded by the circumstances of the crime itself.

The Appellant also asserts application of factor (8), that the defendant was suffering from a mental or physical condition that significantly reduced his culpability for the offenses. Tenn. Code Ann. § 40-35-113(8). With respect to this assertion, the court noted:

> The court did take into consideration the mental evaluation, and found one of the reasons why they were not as credible as they possibly could have been is because of the conflict and also this court did not find, based upon all the other facts, that your mental capacity or state influenced this particular crime.

We find no error in the trial court's assessment of this factor. Two experts testified at the Appellant's sentencing hearing, but their testimony was conflicting as to the actual state of the Appellant's mental status. Though both agreed that the Appellant might be borderline mentally retarded, without more this does not establish that his culpability is automatically lessened.

The Appellant next asserts that mitigating factor (10), that the defendant assisted the authorities in locating or recovering property involved in the crime, is applicable. The Appellant argues that because he surrendered without incident, gave a full confession, and aided in recovering the murder weapon, this factor should have been applied. The trial court found that these acts were "not significant," and we agree. The Appellant's confession to the police followed admitted participation in these crimes to various individuals in the community. Moreover, with respect to aiding the police in locating the murder weapon, the proof indicates that the weapon would have been recovered without the Appellant's aid, as Albert Thacker knew he placed something in the closet. Indeed, it was Albert Thacker who told police that the gun had been moved and led them to "Cyd's" house to recover the weapon.

The Appellant's final argument is that non-enumerated factor (13) should have been applied because he has shown he can be rehabilitated, he can help others, and he has a positive effect on people in the community. Testimony was introduced at the sentencing hearing that the Appellant had a positive effect on fellow inmates through his ministering to them in the jail and aiding them in escaping gang life. We find that, because of the abundance of credible evidence presented, this factor was applicable.

## C. Appropriateness of Sentence

The presumptive sentence for the Appellant's convictions was twenty-years, absent any enhancement or mitigating factors. Having found three enhancement factors and one mitigating

factor applicable, we find upon *de novo* review that the sentences of twenty years for each of the Appellant's class A convictions is justified.

### D. Consecutive Sentences

Lastly, the Appellant asserts that the trial court erred in ordering that his sentences be served consecutively. Specifically, the Appellant asserts that there is no evidence to support the trial court's finding that he is a dangerous offender and, even if shown, there is nothing to support a finding that consecutive sentences are necessary to protect the public against further criminal conduct. In imposing consecutive sentences, the trial court found:

> [T]here is no question that there was more than enough activity by you to indicate that this criminal act was not only done when the risk to human life was high but also it shows and demonstrates that you were a dangerous offender because not only did you kill this person but you robbed the person and then you went on to do other things and also went to a house and hid out.

A trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in Tennessee Code Annotated § 40-35-115(b) (1997) exists. This section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b)(4). However, before sentencing the Appellant to serve consecutive sentences on the basis that he is a dangerous offender, the trial court must find that the resulting sentence is reasonably related to the severity of the crimes and necessary to protect the public against further criminal conduct. *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002); *State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995).

We agree with the trial court's decision ordering that these sentences be served consecutively. The record amply supports a finding that the Appellant was a dangerous offender. As previously noted, the Appellant's callus and calculated killing of his victim clearly reflects that he had little or no regard for human life and no hesitation about taking the life of a human being. The Appellant's boasting of the fact that he "shot [the victim] like a rabbit" provides further evidence of his danger.

The record also supports a finding that the Appellant's consecutive sentences were necessary to protect the public against further conduct. Finally, we conclude that the effective sentence of forty years is also warranted by the severity of the offenses. As such, we find that the Appellant's sentencing issues are without merit.

## Conclusion

Based on the foregoing, we affirm the decision of the trial court regarding the Appellant's convictions and sentences.

_____

DAVID G. HAYES, JUDGE