IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 4, 2003

## AUSTIN EUGENE LINEBACK v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Tipton County**
**Nos. 4129 and 4264      Joe H. Walker, III, Judge**

————————

**No. W2002-01938-CCA-R3-PC  - Filed April 8, 2003**

————————

Through a 2001 Tipton County Circuit Court post-conviction petition, Austin Eugene Lineback challenges his 2001 convictions in that court of statutory rape and especially aggravated sexual exploitation of a minor.  The convictions resulted from his guilty pleas, which the petitioner now alleges are involuntary and unknowing due to ineffective assistance of counsel.  Following an evidentiary hearing, the lower court denied post-conviction relief, and the petitioner now appeals. Upon our review of the record, the parties' briefs, and the applicable law, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and DAVID H. WELLES, JJ., joined.

Gary F. Antrican, Somerville, Tennessee, for the Appellant, Austin Eugene Lineback.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Walt Freeland, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The petitioner, who apparently operated a teen modeling agency, was originally charged with the rape of a fifteen-year-old boy based upon the boy performing fellatio.  The petitioner photographed the boy performing the act. Apparently, the petitioner entered the photograph into his computer, and this action resulted in federal charges.  The petitioner and his family engaged counsel to defend him against both the state and federal charges.

As part of an August 17, 2001 plea agreement, the petitioner consented to a charge by information of especially aggravated sexual exploitation of a minor, based upon the petitioner photographing the act of fellatio.  The state agreed to reduce the rape charge to statutory rape, and

the petitioner agreed to concurrent sentences of two years for statutory rape and ten years for the exploitation conviction. The parties agreed that the petitioner would serve the effective ten-year sentence at 30 percent as a Range I, standard offender. Finally, the plea agreement acknowledged a disposition of the federal cases, in which the petitioner pleaded guilty prior to pleading in the Tipton County cases. He received an effective federal sentence of approximately ten years, and the Tipton County disposition provided that the state sentences would be served concurrently with the federal sentences.

The post-conviction evidentiary hearing consisted of testimony given by counsel and the petitioner, and it is difficult to imagine more divergent accounts of the attorney-client relationship leading up to the guilty pleas in federal court and later in Tipton County.

The petitioner testified in the hearing that his counsel failed to consult with and advise him and failed to proceed with a preliminary hearing. He testified that, if he had been afforded a preliminary hearing, he would have understood the facts of the case.

The petitioner assailed counsel for failing to pursue a motion to suppress evidence obtained by the police during a warrantless search of the petitioner's residence. Even though the search was based upon a written consent signed by the petitioner, the petitioner complained that, when he signed the consent, he had already been arrested without probable cause or a warrant. The petitioner testified that, when he called counsel to inquire about progress on the motion to suppress, counsel told him that the motion had been heard in the petitioner's absence and denied.

The petitioner claimed that counsel failed to interview witnesses and that even though the defense investigator interviewed witnesses, the interviews belatedly occured seven months after the petitioner's arrest when the news coverage had already poisoned the attitudes of the witnesses against the petitioner. The petitioner testified that counsel refused his requests for copies of motions, other court documents, and statements of prosecution witnesses.

The petitioner claimed that when he was transported to Tipton County for court on August 17, 2001, he thought he was going to trial. He testified that the new charge of especially aggravated sexual exploitation of a minor was a surprise to him and that counsel did not explain the nature and elements of the charge. He testified that he was confused by the new charge and that, in the absence of adequate advice and counsel, he was intimidated into pleading guilty. He testified that counsel did not explain that he would have to waive his right to a grand jury determination of probable cause. He testified that counsel read the sentencing ranges to him fifteen minutes before the plea was submitted to the court. He testified, "I was fighting a losing battle because I had a lawyer [who] kept telling me I was going to lose and I was a liar. So I had no choice but to make my plea. None."

The petitioner also testified that counsel failed to secure credit for jail time served between October 20 and December 5, 2000.

-2-

Trial counsel testified that, from the time he accepted employment in the cases, the petitioner was preeminently concerned with the coercion element of the rape charge and did not want to plead to any offense predicated on coercion. The petitioner admitted to counsel that the petitioner was indeed the person who was being fellated by the minor in the photograph. The petitioner maintained that the act was not coerced, despite the victim's statement that the petitioner entreated the victim to fellate him in exchange for the petitioner not publishing on the internet nude photos that the petitioner had taken of the victim. Counsel described a conundrum wherein the petitioner refused to plead to the rape charge and yet the state had a strong case via coupling the victim's testimony and the graphic picture of the boy fellating the petitioner. In addition, counsel was troubled by the knowledge that a sentence for rape carried a release eligibility of 100 percent, as well as the knowledge that the petitioner had admitted to being the other person in the photograph, thus complicating any plans to have the petitioner testify in his own defense.

Counsel testified that he obtained a mental evaluation of the petitioner, which failed to support any diminished capacity defense. He hired an investigator, who interviewed as many of the petitioner's witnesses whom he could locate. "Anyone who would talk to him," counsel testified, "he talked to." However, not only was the investigator denied access to the victim, but the investigation generally uncovered no information helpful to the defense. In fact, counsel testified that at least one of the persons named by the petitioner harbored outrageously damaging opinions of the petitioner. When the investigation was complete, counsel felt that he had no bases upon which to build a credible defense.

Counsel testified that he held several lengthy meetings with the petitioner. The petitioner persisted in seeking detailed information, and counsel testified that they "discussed everything in immense detail." He testified that he furnished the petitioner with copies of all documents and statements that the petitioner requested, although the flow of the materials was hampered by the petitioner's institutional, in-custody status.

Counsel testified that, prior to the scheduled preliminary hearing in Tipton County, he extensively interviewed the investigating officers and his own investigator and opined to the petitioner that there was no need to have a preliminary hearing for discovery purposes. He suggested to the petitioner that, because there was no strategic need for a preliminary hearing, the petitioner might wish to avoid the public disclosure of the details of the offense, and for this reason, the petitioner agreed to waive the preliminary hearing.

In the final analysis, counsel proposed that a plea to the state charges be arranged so that any conviction offenses would not be predicated upon coercion. He testified that he negotiated and coordinated plea agreements with both the federal and state prosecutors. The state prosecutor agreed to reduce the rape charge to statutory rape, which had the desired effect of reducing release eligibility from 100 percent of the sentence to 30 percent, but the state would agree only if the petitioner also would plead guilty to especially aggravated sexual exploitation of a minor and accept an effective ten-year sentence that featured a 30 percent release eligibility. The state also required that the suppression motion be abandoned. Counsel secured a plea agreement for the federal charges

-3-

that yielded an effective sentence of slightly more than ten years, and he arranged for the federal disposition to occur first so that the state sentences could be imposed to run concurrently with the federal sentences, as the state prosecutor had agreed.

Counsel maintained that the petitioner was informed of the emerging plea structure several weeks before the pleas were submitted and had agreed to the disposition in view of the elimination of coercion as an element. Counsel testified that he met with the petitioner for two hours before the federal plea was submitted and explained in detail the various components of the agreement, including the nature and severity of the especially aggravated sexual exploitation of a minor charge, which the state would bring by information and which was the keystone to the overall agreement. He testified that he explained the meaning of charging the offense by information and believed that he advised the petitioner that he would have to waive grand jury consideration of the new charge. In addition, the federal judge conducted a rigorous, exhaustive voir dire of the petitioner to verify the petitioner's understanding of the plea agreement.

Following the federal plea hearing, the Tipton County Circuit Court conducted a plea submission hearing on August 17, 2001, pursuant to Tennessee Rule of Criminal Procedure 11(c). The transcript of this plea submission hearing, which was exhibited to the post-conviction evidentiary hearing, reveals that the petitioner acknowledged his understanding of his rights and his waiver of same, including the right to be tried by a jury and the right to appeal, in favor of pleading guilty. He acknowledged his understanding of the plea agreement and confirmed that he was satisfied with the services of his attorney.

Counsel testified that, although he had moved to suppress evidence gained through the officers' warrantless search of the petitioner's residence, he abandoned the motion because (1) the officers had obtained the petitioner's consent in writing to search the residence and (2) the state ultimately conditioned its plea offer upon the suppression issue being abandoned. Counsel believed that, because of the consent document, the odds were against the petitioner on the suppression issue: "[We had] a case where he gave explicit permission for the officers to search and seize any property in his trailer. He did it himself." The consent form signed by the petitioner was exhibited to the evidentiary hearing. On cross-examination, counsel admitted that he had not formed an opinion about whether the petitioner had been arrested before he signed the consent form.

On cross-examination, counsel was asked whether he informed the petitioner that, if the victim was an accomplice or consenting participant in the fellatio, the victim's testimony would have to be corroborated. Counsel did not claim that he imparted this information; rather, he explained that, in his view, the extortion wrought against the victim would have been viewed by the court as vitiating the consent of the victim.

The post-conviction court entered extensive findings of fact and conclusions of law, the gravamen of which is that the petitioner's guilty plea was knowingly and voluntarily entered and that the petitioner established neither deficient performance of counsel nor prejudice from counsel's performance. Of particular interest to this court on appeal is the lower court's specific finding that

it accredited the testimony of counsel over that of the petitioner as to the many points on which the two differed. The judge opined that, had the suppression motion been pressed and heard, the trial could would have denied the motion.

On appeal, the petitioner's main ineffective-assistance-of-counsel focus is directed to the claims that (1) trial counsel did not inform the petitioner that a consent to search following an illegal arrest might have been tainted and voidable and that the damning photograph found might have been suppressed; and (2) with the photograph suppressed, the state might not have been able to corroborate the victim's consensual act of fellatio.

In post-conviction proceedings, the petitioner has the burden of proving by clear and convincing evidence the claims raised. Tenn. Code Ann. § 40-30-210(f) (1997). On appeal, the lower court's findings of fact are reviewed *de novo* with a presumption of correctness that may only be overcome if the evidence preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

When a petitioner challenges the effective assistance of counsel, he has the burden of establishing (1) deficient representation and (2) prejudice resulting from that deficiency. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Deficient representation occurs when counsel's services fall below the range of competence demanded of attorneys in criminal cases. *Bankston v. State*, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991). Prejudice is the reasonable likelihood that, but for deficient representation, the outcome of the proceedings would have been different. *Overton v. State*, 874 S.W.2d 6, 11 (Tenn. 1994). When it is alleged that the ineffective assistance of counsel resulted in a guilty plea, the burden is upon the petitioner to establish the prejudice prong of *Strickland* by proving that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985). On review, there is a strong presumption of satisfactory representation. *Barr v. State*, 910 S.W.2d 462, 464 (Tenn. Crim. App. 1995).

When reviewing the entry of a guilty plea, the overriding concern is whether the plea is knowingly, voluntarily and understandingly made. *Boykin v. Alabama,* 395 U.S. 238, 242-44, 89 S. Ct. 1709, 1712 (1969). "[A] plea is not 'voluntary' if it is the product of 'ignorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats. . . .' " *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting *Boykin*, 395 U.S. at 242-43, 89 S. Ct. at 1712). Moreover, a plea cannot be voluntary if the defendant is "incompetent or otherwise not in control of his mental facilities" at the time it is entered. *Id*. at 904-05 (quoting *Brown v. Perini*, 718 F.2d 784, 788 (6th Cir.1983)). A defendant's plea of guilty is not constitutionally infirm or coerced merely because the defendant opted to plead guilty as a means of avoiding a more severe sentence following a trial. *See, e.g., Brady v. United States*, 397 U.S. 742, 751, 90 S. Ct. 1463, 1471 (1970).

Our review of the record and the applicable law gives us no pause in agreeing that the petitioner failed to establish his post-conviction claims by clear and convincing evidence.

We defer to the lower court's credibility assessments. Because counsel's testimony thus accredited adequately addressed most of the issues raised by the petitioner, the denial of post-conviction relief on those issues was proper.

Counsel did not, however, squarely controvert (1) the claim that he failed to analyze and inform the petitioner about the post-arrest consent issue or (2) the claim that he failed to inform and advise the petitioner regarding the corroboration rule.

First, we look at whether counsel was ineffective in failing to inform the petitioner of the possibility of suppressing the evidence seized in the residence, especially in light of a claim that the petitioner was under arrest at the time he signed the consent form. *See, e.g., Bentley v. State*, 552 S.W.2d 778, 780 (Tenn. Crim. App. 1977) (holding that a search "under the circumstances shown in this record was a far cry removed from a free consent search," when the defendant had refused "to permit a search when arrested and placed in custody in the squad car. His consent came about only when told they (police) would go get a warrant if he did not consent and started the squad car to do so"). Although the lower court determined that, as the trial court, it would not have sustained the motion to suppress, we need not determine whether the petitioner voluntarily consented to the search of his residence because, as a post-conviction petitioner alleging ineffective assistance of counsel, he has failed to prove this claim by clear and convincing evidence.

To be sure, the petitioner testified that the officers came to his residence and arrested him without a warrant and that he consented to the search only after he was arrested. The record is devoid, however, of any proof of the circumstances of the officers' visit, whether they had probable cause to arrest the petitioner without a warrant, whether the petitioner was in custody when he signed the consent form, and whether the totality of the circumstances vitiated the petitioner's consent to the search. *See id.* (applying "totality of the circumstances" test to determine whether the defendant, who was in custody, voluntarily consented to the search of his residence). The absence of these circumstances precludes a post-conviction court from determining that trial counsel was remiss in not discussing the issue more fully with the petitioner, especially when trial counsel testified that he believed the suppression motion was doomed and that abandoning it was a small price to pay to gain concessions in plea bargaining. We stress that we are not suggesting that a defendant complaining of a warrantless search bears any burden to establish the unreasonableness of the search; rather, when the task at hand is to demonstrate ineffective assistance of counsel, the burden is on the petitioner to establish a matrix of facts from which counsel's performance and any resulting prejudice can be judged. The petitioner has failed to carry this burden in the case before us.

Next, we examine the issue of counsel's performance in not discussing with the petitioner the accomplice corroboration rule.

In Tennessee, a conviction may not be based upon the uncorroborated testimony of an accomplice. *State v. Bigbee*, 885 S.W.2d 797, 803 (Tenn. 1994). An accomplice is an individual who knowingly, voluntarily and with common intent participates with the principal offender in the commission of an offense. *State v. Lawson*, 794 S.W.2d 363, 369 (Tenn. Crim. App. 1990).

Although "'[a] common test [of complicity] is whether the alleged accomplice could have been indicted for the offense,'" *State v. Anderson*, 985 S.W.2d 9, 16 (Tenn. Crim. App. 1997) (quoting *State v. Perkinson*, 867 S.W.2d 1, 7 (Tenn. Crim. App. 1992)), this court has viewed the consenting victim of a statutory rape as an accomplice. *See State v. McKnight*, 900 S.W.2d 36, 48 (Tenn. Crim. App. 1994). At any rate, when the facts are undisputed regarding an individual's participation in the crime, whether she is an accomplice is a question of law for the trial court. *Perkinson*, 867 S.W.2d at 7. However, when the facts are disputed or susceptible to different inferences, it is a question for the jury, *Conner v. State*, 531 S.W.2d 119, 123 (Tenn. Crim. App. 1975), and the jury determines whether an accomplice's testimony has been sufficiently corroborated, *Pennington v. State*, 478 S.W.2d 892, 898 (Tenn. Crim. App. 1971).

From the post-conviction record, all we can discern about the claim that the young participant consented to the fellatio is that the consent issue would have been disputed, creating a jury question at trial whether the petitioner committed the charged offense of rape or, alternatively, the lesser offense of statutory rape. In his evidentiary hearing testimony, trial counsel forcefully opined that a jury considering a charge of rape would be sympathetic to and persuaded by the juvenile victim that the petitioner extorted the "consent" through threatening to publish nude photographs of the victim. *See* Tenn. Code Ann. §§ 39-13-503(a)(1) (1997) (rape is committed, *inter alia*, by one who unlawfully sexually penetrates a victim when "[f]orce or coercion is used to accomplish the act"), -501(1) (1997) ("'Coercion' means threat of kidnapping, *extortion*, force or violence to be performed immediately or in the future . . . .") (emphasis added); *see also id.* § 39-14-112 (1997) (at least for purposes of property crimes, "[a] person commits extortion who uses coercion upon another person with the intent to: (1) Obtain property, services, *any advantage* or immunity; or (2) *Restrict unlawfully another's freedom of action*.") (emphasis added). In the face of trial counsel's testimony and the applicable statutory law, the petitioner's bald assertion that the victim consented to fellatio falls short of the mark in showing that counsel was remiss in not explaining that the victim's trial testimony would have required corroboration. In other words, we believe that the petitioner failed to prove by clear and convincing evidence that counsel performed deficiently or that he was prejudiced by counsel's performance.

In view of the record and the applicable law, we affirm the denial of post-conviction relief.

_____
JAMES CURWOOD WITT, JR., JUDGE